J-S29024-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| RONALD WALKER | : | |
| | : | |
| Appellant | : | No. 323 EDA 2021 |

Appeal from the PCRA Order Entered January 8, 2021,
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s):  CP-51-CR-0012167-2014,
CP-51-CR-0013498-2014, CP-51-CR-0013501-2014,
CP-51-CR-0013502-2014.

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| RONALD WALKER | : | |
| | : | |
| Appellant | : | No. 324 EDA 2021 |

Appeal from the PCRA Order Entered January 8, 2021,
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s):  CP-51-CR-0012167-2014,
CP-51-CR-0013498-2014, CP-51-CR-0013501-2014,
CP-51-CR-0013502-2014.

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| RONALD WALKER | : | |

:
Appellant          :    No. 325 EDA 2021

Appeal from the PCRA Order Entered January 8, 2021,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0012167-2014,
CP-51-CR-0013498-2014, CP-51-CR-0013501-2014,
CP-51-CR-0013502-2014.

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RONALD WALKER | : | |
| | : | |
| Appellant | : | No. 326 EDA 2021 |

Appeal from the PCRA Order Entered January 8, 2021,
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s):  CP-51-CR-0012167-2014,
CP-51-CR-0013498-2014, CP-51-CR-0013501-2014,
CP-51-CR-0013502-2014.

BEFORE:   PANELLA, P.J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KUNSELMAN, J.:       **FILED DECEMBER 15, 2021**

In these consolidated *pro se* appeals, Ronald Walker challenges the PCRA court's denial of his first petition filed pursuant to the Post Conviction Relief Act.  42 Pa.C.S.A. §§ 9541-9546.  We affirm.

The PCRA court summarized at the length the pertinent facts and trial testimony underlying Walker's criminal convictions as follows:

---

[*] Former Justice specially assigned to the Superior Court.

- 2 -

The evidence at trial established that [Complainant] and [Walker] had been in a relationship for approximately six months in 2014 after having met at [Complainant's] Daycare Center where [Walker's] children attended. After living together for a while, Complainant ended the relationship. On August 10, 2014, a week after [Walker] moved out, he returned to Complainant's home, brandishing a gun and awakened her with "Wake up bitch." [Walker], who was initially wearing a mask and gloves, while holding the gun, continuously punched Complainant about the head and stomach, interrogated her about messages on her phone, and forced her to perform oral sex on him. The violent physical and sexual assault went on for hours, culminating with [Walker] transporting [Complainant] to his home where [she] begged to receive medical attention. Finally, [Walker] drove her to the hospital, but gave an implied threat that her family would be harmed if she did not fabricate a story that she was jumped by a group of girls. At the hospital, [Walker] posed as [Complainant's] fiancé, remained nearby as she was treated. [Complainant's] injuries were so severe that she had to be transported by ambulance to a facility that specialized in concussions where she remained heavily medicated for several days. [Walker] remained close throughout [Complainant's] hospitalization, drove her home when she was discharged and remained and cared for her children while she recuperated. Fearing for her life and that of her family, [Complainant] did not disclose the incident to anyone.

As [Complainant] recovered and returned to work, [Walker's] behavior, once again, became increasingly abusive and threatening. Finally, [Complainant] decided to tell her family about the August 10th incident. Ultimately, [Walker's] barrage of harassment and threats compelled her to contact the police on August 29, 2014. Following the report to the police, Complainant attempted to serve [Walker] with a Protection From Abuse Order, but he refused to meet her. A few days later, Complainant learned that her Daycare Center had been burglarized and items stolen and another center that she was in the process of renovating had been set on fire. She also learned that an attempt had been made to attack her brother and that her Daycare van had been stolen. Afraid for her life,

Complainant took her mother and children to a hotel in New Jersey. [Walker] continued to try to contact Complainant, who, ultimately, out of fear, agreed to meet with him. During the meeting, [Walker] admitted to the damage to her businesses and the attack on her family member. Despite her fears, Complainant agreed to move back into [Walker's] home in the hope that her family would be spared further attacks. While there, Complainant was constantly reminded by [Walker] that she was not to tell anyone about his beating her up, destroying her businesses or attacking her brother. She remained with [Walker] for several weeks until he was arrested for the August 10th attack. After [Walker] was arrested, Complainant made arrangements to move out of the city to an undisclosed location.

The trial evidence included a surveillance camera video showing [Walker] in the vicinity of [Complainant's] Daycare Center at the time of the fire. 404(b) evidence of [Walker's] prior abuse against women he had relationships with was also admitted. Detectives and police officers testified to their investigations into the incidents which occurred on September 3, 2014 at the Prestige Daycare Center, 4907 N. 5th Street in Philadelphia (vandalism and theft), at 5060 Copley Road in Philadelphia (shattered window and spent cartridge casings) and at 1509-1511 Wadsworth Avenue in Philadelphia (fires set in six different locations and heavy smell of gasoline).

Complainant's assistant, Tanita Carodine, testified that on September 3, 2014, she noticed that the Dodge van she used for her job at the Daycare Center was missing from her back driveway. Inside the van, among other things, was a bag which contained her daughter's uniforms. Sometime thereafter, [Walker] contacted Ms. Carodine and arranged to meet her near the Daycare Center. At that time, he gave her the bag with her daughter's uniforms. The van was recovered later parked on the street.

[Walker] testified and denied all of the accusations against him. He testified that he had no idea why Complainant, her brother and the Daycare assistant would testify and implicate him the way they did. He also presented his mother, daughter and son who all stated, after viewing the surveillance video, that they could not

- 4 -

recognize the man in the video who was seen in the back of the Daycare the night of the fire.

PCRA Court Opinion, 3/21/21, at 3-5 (citations and footnote omitted).

The PCRA Court also summarized the procedural history as follows:

On September 25, 2014, [Walker] was arrested and charged with aggravated assault, involuntary deviate sexual intercourse, burglary, sexual assault, possession of an instrument of crime, witness intimidation and related offenses. Thereafter, on October 28, 2014, [Walker] was charged with arson, two more counts of burglary, three counts of retaliation against a witness or victim, three more counts of witness intimidation, criminal mischief` and related charges.

Due to the allegations of witness intimidation, the Commonwealth requested that a grand jury be empaneled pursuant to Pa. R Crim P. 556 et seq. A grand jury was convened and voted to indict [Walker] on the above charges. The supervising judge of the grand jury, the Honorable Charles Ehrlich, after receiving the grand jury's indictments authorized the Commonwealth to prepare bills of information pursuant to Pa. R. Crim. P. 560.

A jury trial was held before this court. On April 15, 2015, the jury returned a verdict of guilty on all aforementioned charges, a verdict of not guilty on one charge of discharging a firearm into an occupied structure and all remaining charges were nolle prossed. Sentencing was deferred for presentence and mental health reports to be filed. On September 15, 2016, the Commonwealth chose not to pursue a Sexually Violent Predator designation at sentencing. [Walker] was sentenced to an aggregate term of thirty-six to ninety-seven years of incarceration.

On February 13, 2017, a notice of appeal to the Superior Court was filed. On October 30, 2017, the Superior Court ordered a *Grazier* Hearing. On November 13, 2017, a *Grazier* hearing was held and [Walker] was permitted to proceed *pro se*. On August 23, 2018, judgment of sentence was affirmed. [Walker] filed a petition for allowance of appeal to the Supreme Court of Pennsylvania which was

denied on September 4, 2019. [Walker] thereafter filed motions to both the Supreme Court and Superior Court requesting reconsideration and a new trial which were both denied.

The instant [PCRA] petition was filed on December 9, 2019. [Walker] became dissatisfied with his PCRA counsel and requested to proceed *pro se*. Due to COVID-19 court protocols and technical difficulties with the video equipment used to communicate with state inmates, it took until November 23, 2020 for a ***Grazier*** hearing to be held. At this time, [Walker] was permitted to proceed *pro se* and informed that a 907 Notice of Intent to Dismiss would be filed. The 907 Notice was filed that day. Despite the court informing [Walker] that a formal dismissal of the PCRA [petition] would follow the 907 Notice and that he should wait until the formal dismissal was filed to file an appeal, [Walker] filed a notice of appeal to the Superior Court on December 9, 2020. This untimely appeal was docketed at 116 EDA 2021, 117 EDA 2021, 118 EDA 2021, and 119 EDA 2021 and this court was advised by the Superior Court Prothonotary's Office to dismiss the PCRA [petition] as planned and that no opinion was needed for the untimely appeal. On January 8, 2021, the Order Dismissing the PCRA Petition was entered. [Walker] filed this timely appeal, pro se, on January 25, 2021.

PCRA Court Opinion, 3/21/21, at 1-2 (excess capitalization omitted).

We set forth Walker's multiple issues raised in this appeal verbatim:

1. *Is it not the duty for the trial court to redress a procedural error, sua sponte, when the invocation of jurisdiction is absent?*

2. *Is it not an Equal Protection Right, and a Due Process Right violation, pursuant to our State and Federal Constitution, for trial court to continue to proceed with judicial proceedings knowing that [our] procedural Rules, Statutes and well settled PA. laws were abrogated?*

3. *Is it not unreasonable, bias, prejudice, abuse of discretion and an egregious example of Judicial Misconduct against appellant for the trial court/PCRA court not to address 'Lack of Jurisdiction/Void Judgment' claims in accordance with [our] 'stare decisis' doctrine?*

4. *Is it not uncinstitutional to keep appellant illegally in State confinement, 1,600 days, on a 'void judgment'?*

5. *Is it not the only remedy a discharge with prejudice pursuant to Rule 600(C)(1), for Commonwealth's lack of due diligence? And a double jeopardy violation to remand back to lower court for a new trial in which 42 PA. C.S.A. 5552(b), would prohibit it, due to a statute of limitation violation?*

6. *Did not this Court error in affirming the admission of prior bad acts, when Commonwealth's argument was to show why the victim delayed in reporting the incident? (N.O.T. 4/6/15 pg 4 @ 22, attached Exhibit 'G'). Which is not one of the exceptions to PA.R.E. 404. Furthermore, was not the testimony of Shataria Waddy more prejudicial than probative? Ms. Waddy's incident shares no similarity with the case at bar. Ms. Waddy's testimony was not of any sexual contiguous or any jealous rages. (pages 35 & 36 of appellant's 'Emergency Appeal..').*

7. *Is it not the onus of the Commonwealth to secure and serve an arrest warrant? And for the Commonwealth to obtain and record the Order (Certification) from the Supreme Court of Pa. to resume the use of the Indicting Grand Jury?*

8. *Did not the appellant preserve the right to appeal the arrest warrant(s) and indictment(s), by filing a motion to suppress the arrest warrant(s) and indictment(s) on December 19, 2014? Which was denied by operational of law?*

9. *Would it not be unreasonable and a waste of judicial proceedings to remand for an 'Evidentiary Hearing' and a 'Writ of Habeas Corpus', if lower court cannot provide this Court or appellant with the pertinent documents? (arrest warrant for docket MC-CR-0036887-2014/CP-51-CR 0013501-2014; and the Order (Certification) from the Supreme Court of PA., for the resumption of the Indicting*

*Grand Jury). Howbeit, could it not be inferred that these documents doesn't exist?*

10.     Is it not an egregious example of Judicial Misconduct for the judge who presided over the two Indicting Grand Jury hearings, 10/19/14 & 11/17/14, to do so without the Order (Certification) from the Supreme Court of PA> to resume the use of an Indicting Grand Jury? pursuant to Rule 556(B).

11.     Is not {trial} counsel(s) ineffectiveness for:

a. *not addressing Constitutional and procedural violations to and after trial? For failing to preserve or remediate a procrdural issue?*

b. *for agreeing with Commonwealth not to call appellant's alibi witness(es)? N.O.T. 4/9/15 pg 128 @ 14-21.*

c. *Foe no addressing the absence of a prerequisite Order from the Supreme Court of PA. to resume the use of an Indicting Grand Jury? This would have been palpable if there was proper preparation for trial. Without this Order (Certification) from the Supreme Court of PA., the indictments from the Indicting Grand Jury is a nullity. And without an indictment from a preliminary hearing, there is nothing on record to invoke trial to commence. Therefore, court had no jurisdiction. Our Supreme Court of PA. held in Re Casale, 517 a.2d 1269 (1986), "we now hold that while common pleas has jurisdiction to determine controversies of the general class to which case belongs, it lacks the power to act until that jurisdiction has been invoked in accordance with our pertinent Rules of Criminal Procedure".*

d. *for not addressing the impermissible admission of prior bad acts in which the Commonwealth's argument was to show why the victim did not report the incident promptly? This is not an exception to Rule 404.*

e. *for not addressing the fact that appellant was not sentenced within the period required under Pa.R.Crim.P.704. Commonwealth v. Padden, 783 A.3d 299,315 (Pa. Super 2001).*

f. *for abandoning appellant with no good cause on record.*

g. *for not objecting to the allowance of a forensic report without certifications [and] or the forensic expert on record, which was prejudicial and caused appellant's claim to be waived.*

h. *for not objecting to appellant paying restitution without a hearing to show that appellant has the ability to pay.*

i. *for not addressing the absence of any arrest warrant prior to trial which caused appellant claim to be waived.*

j. *for court appointed counsel filing a defective amended PCRA petition, and never speaking with appellant prior to filing his amended petition? And for not filing a supplemental petition, as requested by appellant and filing it on record?*

k. *was it not for the aforementioned ineffectiveness of counsel(s), prejudicial to appellant's case and "so undermined the truth determining process that no reliable adjudication of guilt or innocence could have taken place". And caused pertinent claims to be waived.*

Walker's Brief at 5-6.

Our scope and standard of review is well-settled:

> In PCRA appeals, our scope of review is limited to the findings of the PCRA court and the evidence on the record of the PCRA court's hearing, viewed in the light most favorable to the prevailing party. Because most PCRA appeals involve questions of fact and law, we employ a mixed standard of review. We defer to the PCRA court's factual findings and credibility determinations supported by the record. In contrast, we review the PCRA court's legal conclusions *de novo.*

***Commonwealth v. Reyes-Rodriguez***, 111 A.3d 775, 779 (Pa. Super. 2015) (*en banc*) (internal citations and quotations omitted).

To be eligible for post-conviction relief, a petitioner must plead and prove by a preponderance of the evidence that his conviction or sentence resulted from one or more of the enumerated errors or defects in 42 Pa.C.S.A.

section 9543(a)(2), and that the issues he raises have not been previously litigated. ***Commonwealth v. Carpenter***, 725 A.2d 154, 160 (Pa. 1999). An issue has been "previously litigated" if the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue, or if the issue has been raised and decided in a proceeding collaterally attacking the conviction or sentence. ***Carpenter***, 725 A.2d at 160; 42 Pa.C.S.A. § 9544(a)(2), (3). If a claim has not been previously litigated, the petitioner must then prove that the issue was not waived. ***Carpenter***, 725 A.2d at 160. An issue will be deemed waived under the PCRA "if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal, or in a prior state post-conviction proceeding." 42 Pa.C.S.A. § 9544(b).

Regarding Walker's claims of ineffective assistance of counsel, we note that, to obtain relief under the PCRA premised on a claim that counsel was ineffective, a petitioner must establish by a preponderance of the evidence that counsel's ineffectiveness so undermined the truth determining process that no reliable adjudication of guilt or innocence could have taken place. ***Commonwealth v. Johnson***, 966 A.2d 523, 532 (Pa. 2009). "Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner." ***Id.*** This requires the petitioner to demonstrate that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) the petitioner was prejudiced

- 10 -

by counsel's act or omission. *Id.* at 533. A finding of "prejudice" requires the petitioner to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim. ***Commonwealth v. Martin***, 5 A.3d 177, 183 (Pa. 2010).

Here, the PCRA court has authored a thorough and well-reasoned opinion pursuant to Rule 1925(a). The Honorable Gwendolyn N. Bright has addressed the claims as stated in Walker's *pro se* Rule 1925(b) statement, to the extent she could discern them, and found several of Walker's issues either previously litigated or waived.[1] In addition, Judge Bright has addressed each of Walker's ineffectiveness claims raised in his Rule 1925(b) statement and explained why none of them warrants post-conviction relief.

We discern no legal errors in Judge Bright's analysis, and we find her factual findings and credibility determinations fully supported by our review of the record. As such, we adopt Judge Bright's 1925(a) opinion as our own in affirming the order denying Walker post-conviction relief. ***See*** PCRA Court's Opinion, 3/21/21, at 5-6 (addressing Walker's multiple issues which essentially misapprehend the requirements for proceeding in a criminal case

---

[1] Our review of the record supports Judge Bright's characterization of Walker's Rule 1925(b) statement as including eleven "main issues," and that he "framed his issues on appeal as questions, some deliberately vague." PCRA Court Opinion, 3/21/21, at 3.

by grand jury); at 6 (explaining that no Rule 600 violation occurred); at 6-7 (acknowledging that Walker's issue involving the introduction of prior-bad-act evidence was previously litigated on direct appeal); at 7 (rejecting Walker's after-discovered evidence claim based on a missing arrest warrant as refuted by the record); and at 8-11 (rejecting Walker's multiple claims of ineffectiveness as lacking arguable merit, refuted by the record, or undeveloped).[2]

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/15/2021

---

[2] The parties are directed to attach Judge Bright's March 21, 2021 opinion to this memorandum in any future appeal.

FILED
2024 MAR 31 AM 10: 43

IN THE COURT OF COMMON PLEAS
PHILADELPHIA COUNTY
CRIMINAL TRIAL DIVISION

COMMONWEALTH OF PENNSYLVANIA :       CP-51-CR-0012167-2014
                                     :       CP-51-CR-0013498-2014
                                     :       CP-51-CR-0013501-2014
                                     :       CP-51-CR-0013502-2014
                   V.                :
                                     : SUPERIOR COURT OF PENNSYLVANIA
                                     :       323 EDA 2021
                                     :       324 EDA 2021
       RONALD WALKER                 :       325 EDA 2021
                                     :       326 EDA 2021

OPINION

BRIGHT, J.

On September 25, 2014, Appellant was arrested and charged with Aggravated Assault,

Involuntary Deviate Sexual Intercourse, Burglary, Sexual Assault, Possession of an Instrument of Crime,

Witness Intimidation and related offenses. Thereafter, on October 28, 2014, Appellant was charged with

Arson, two more counts of Burglary, three counts of Retaliation Against a Witness or Victim, three more

counts of Witness Intimidation, Criminal Mischief and related charges.

Due to the allegations of witness intimidation, the Commonwealth requested that a Grand Jury be

empaneled pursuant to Pa. R. Crim. P. 556 et seq. A Grand Jury was convened and voted to indict

Appellant on the above charges. The Supervising Judge of the Grand Jury, the Honorable Charles Ehrlich,

after receiving the Grand Jury's indictments authorized the Commonwealth to prepare bills of information

pursuant to Pa. R. Crim. P. 560.

A jury trial was held before this Court. On April 15, 2015, the jury returned a verdict of Guilty

on all aforementioned charges, a verdict of Not Guilty on one charge of Discharging a Firearm into an

Occupied Structure and all remaining charges were Nolle Prossed. Sentencing was deferred for

presentence and mental health reports to be filed. On September 15, 2016, the Commonwealth chose not

to pursue a Sexually Violent Predator designation at sentencing. Appellant was sentenced to an aggregate

term of thirty-six to ninety-seven years of incarceration.

1

On February 13, 2017, a Notice of Appeal to the Superior Court was filed. On October 30, 2017, the Superior Court ordered a Grazier Hearing. On November 13, 2017, a Grazier hearing was held and Appellant was permitted to proceed pro se. On August 23, 2018, Judgment of Sentence was Affirmed. Appellant filed a Petition for Allowance of Appeal to the Supreme Court of Pennsylvania which was denied on September 4, 2019. Appellant thereafter filed motions to both the Supreme Court and Superior Court requesting reconsideration and a new trial which were both denied.

The instant Post-Conviction Relief Act Petition was filed on December 9, 2019. Appellant became dissatisfied with his PCRA counsel and requested to proceed pro se. Due to COVID-19 court protocols and technical difficulties with the video equipment used to communicate with state inmates, it took until November 23, 2020 for a Grazier hearing to be held. At this time, Appellant was permitted to proceed pro se and informed that a 907 Notice of Intent to Dismiss the PCRA would be filed. The 907 Notice was filed that day. Despite the Court informing Appellant that a Formal Dismissal of the PCRA would follow the 907 Notice and that he should wait until the Formal Dismissal was filed to file an appeal, Appellant filed a Notice of Appeal to the Superior Court on December 9, 2020. This untimely appeal was docketed at 116 EDA 2021, 117 EDA 2021, 118 EDA 2021, and 119 EDA 2021 and this Court was advised by the Superior Court Prothonotary's Office to dismiss the PCRA as planned and that no opinion was needed for the untimely appeal. On January 8, 2021, the Order Dismissing the PCRA Petition was entered. Appellant filed this timely appeal, pro se, on January 25, 2021.

## ISSUES

Appellant filed a 1925(b) Statement relating to his first, untimely appeal, annotated by the docket number 116 EDA 2021, despite not having received a 1925(b) Order from this Court in regards to that appeal. When this Court filed a 1925(b) Order on February 9, 2021, Appellant responded by referencing his initial 1925(b) Statement and attaching a copy of that filing. The Court will refer to this filing for Appellant's issues on appeals, despite it being filed under the incorrect docket.

2

Appellant's 1925(b) Statement includes eleven main issues. Appellant has framed his issues on appeal as questions, some deliberately vague. The issues presented include jurisdiction, equal protection, bias, illegal confinement, due diligence, admission of prior bad acts, preservation of rights for appeal, Appellant's assertion that certain documents do not exist, and eleven points of ineffective assistance of counsel.

## FACTS

The following facts are respectfully incorporated from the 1925(a) Opinion filed July 25, 2017.

The evidence at trial established that Complainant, Nyeisha Cabiness, and Appellant had been in a relationship for approximately six months in 2014 after having met at Cabiness' Daycare Center where Appellant's children attended. N.T. 4/9/15 at 5, 49[1]. After living together for a while, Complainant ended the relationship. On August 10, 2014, a week after Appellant moved out, he returned to Complainant's home, brandishing a gun and awakened her with "Wake up bitch". N.T. 4/8/15 at 53, 55. Appellant, who was initially wearing a mask and gloves, while holding the gun, continuously punched Complainant about the head and stomach, interrogated her about messages on her phone, and forced her to perform oral sex on him. The violent physical and sexual assault went on for hours, culminating with Appellant transporting Cabiness to his home where Cabiness begged to receive medical attention. Id. at 58-60, 65. Finally, Appellant drove her to the hospital, but gave an implied threat that her family would be harmed if she did not fabricate a story that she was jumped by a group of girls. Id. at 66. At the hospital, Appellant, posed as Cabiness' fiance, remained nearby as she was treated. Cabiness' injuries were so severe that she had to be transported by ambulance to a facility that specialized in concussions where she remained heavily medicated for several days. Appellant remained close throughout Cabiness' hospitalization, drove her home when she was discharged and remained and cared for her children while she recuperated. Id. at 67-69. Fearing for her life and that of her family, Cabiness did not disclose the incident to anyone. Id. at 69-72.

---

[1] "N.T." refers to the Notes of Testimony taken at the trial before the Honorable Gwendolyn N. Bright

As Cabiness recovered and returned to work, Appellant's behavior, once again, became increasingly abusive and threatening. Finally, Cabiness decided to tell her family about the August 10th incident. Ultimately, Appellant's barrage of harassment and threats compelled her to contact the police on August 29, 2014. Following the report to the police, Complainant attempted to serve Appellant with a Protection From Abuse Order, but he refused to meet her. Id. at 82-83. A few days later, Complainant learned that her Daycare Center had been burglarized and items stolen and another center that she was in the process of renovating had been set on fire. She also learned that an attempt had been made to attack her brother and that her Daycare van had been stolen. Afraid for her life, Complainant took her mother and children to a hotel in New Jersey. Id. at 88. Appellant continued to try to contact Complainant, who, ultimately, out of fear, agreed to meet with him. N.T. 4/9/15 at 23-24. During the meeting, Appellant admitted to the damage to her businesses and the attack on her family member. N.T. 4/8/15 at 89-90. Despite her fears, Complainant agreed to move back into Appellant's home in the hope that her family would be spared further attacks. Id. at 91. While there, Complainant was constantly reminded by Appellant that she was not to tell anyone about his beating her up, destroying her businesses or attacking her brother. N.T. 4/9/15 at 12. She remained with Appellant for several weeks until he was arrested for the August 10th attack. After Appellant was arrested, Complainant made arrangements to move out of the city to an undisclosed location.

The trial evidence included a surveillance camera video showing Appellant in the vicinity of Cabiness' Daycare Center at the time of the fire. N.T. 4/8/15 at 116-119. Rule 404 (b) evidence of Appellant's prior abuse against women he had relationships with was also admitted. N.T. 4/10/15 at 4-24 and 72-91. Detectives and police officers testified to their investigations into the incidents which occurred on September 3, 2014 at the Prestige Daycare Center, 4907 N. 5th Street in Philadelphia (vandalism and theft), at 5060 Copley Road in Philadelphia (shattered window and spent cartridge casings) and at 1509-1511 Wadsworth Avenue in Philadelphia (fires set in six different locations and heavy smell of gasoline). Id. at 25-43, 44-56, 93-170 and N.T. 4/13/15 at 13-39.

4

Complainant's assistant, Tanita Carodine, testified that on September 3, 2014, she noticed that the Dodge van she used for her job at the Daycare Center was missing from her back driveway. N.T. 4/10/15 at 59-60. Inside the van, among other things, was a bag which contained her daughter's uniforms. Sometime thereafter, Appellant contacted Ms. Carodine and arranged to meet her near the Daycare Center. At that time he gave her the bag with her daughter's uniforms. Id. at 62. The van was recovered later parked on the street. Id. at 64 and 70.

Appellant testified and denied all of the accusations against him. He testified that he had no idea why Complainant, her brother and the Daycare assistant would testify and implicate him the way they did. N.T. 4/13/15 at 95-168. He also presented his mother, daughter and son who all stated, after viewing the surveillance video, that they could not recognize the man in the video who was seen in the back of the Daycare the night of the fire. Id. at 81, 85, and 91.

## DISCUSSION

Appellant's 1925(b) Statement is full of vague and circular complaints. Some of the many complaints appear to be the same, however it is unclear which specific issues Appellant wishes to address on appeal. Appellant's complaints, posed as questions, address hypothetical scenarios of a potential new trial and ask the Court to make assumptions not based in the record. It is clear that the Court is not required to guess at what Appellant is trying to raise in his 1925(b) Statement when the complaints are too vague to allow easy identification of the issues. Commonwealth v. Heggins, 809 A.2d 908, 911 (Pa. Super. 2002). The following discussion of law attempts to address what issues can be discerned from Appellant's 1925(b) Statement.

Many of Appellant's complaints center around his belief that the Commonwealth did not properly convene a Grand Jury under Pa. R. Crim. P. 556. Pa. R. Crim. P. 556 (A) states, "Each of the several courts of common pleas may proceed with an indicting grand jury pursuant to these rules only in cases in which witness intimidation has occurred, is occurring, or is likely to occur." Appellant's many acts of witness intimidation are summarized in the facts as the incidents which occurred on September 3, 2014.

5

Appellant believes that the Grand Jury which indicted him was not properly certified. Appellant seems to base this belief on the fact that he is not in possession of paperwork. There is no evidence that the proper procedure to convene a Grand Jury was not followed in this case. Additionally, there is no legal authority that Appellant cites that supports his belief that he is entitled to paperwork certifying the Grand Jury. His many claims surrounding the lack of jurisdiction and failure to provide Grand Jury certification are meritless.

Appellant claims that this Court did not address his complaints regarding jurisdiction. These complaints were included in Appellant's pro se PCRA Petition, his counseled Amended Petition and his counseled Supplemental Amended Petition. All of these filings were considered by the Court, including all claims brought forth, and dismissed. The complaint that the claims were not addressed is meritless.

Appellant complains he has been illegally confined on a "void judgment". Appellant offers no explanation of what he means by this bald statement. There has been no void judgment in Appellant's case. This claim is meritless, and undeveloped.

Appellant makes a claim for discharge pursuant to Rule 600(C)(1). Appellant alleges that Commonwealth has failed to exercise due diligence and created delays in his case. This claim is misguided, Appellant was first arrested on September 25, 2014 and his trial commenced on April 8, 2015. Rule 600 provides 365 days in which to bring a defendant to trial, that limit was not exceeded here. Appellant references a hypothetical new trial in his Rule 600 claim. If Appellant were to be granted a new trial, the Commonwealth would have 365 days from the granting of said new trial to bring him to trial. Commonwealth v. Dalessio, 580 A.2d 875, 877 (Pa. Super 1990).

Appellant next complains that the Court erred in allowing the admission of prior bad acts and the testimony of Shataria Waddy. This Court admitted the evidence of Mr. Walker's prior abusive relationships as admissible 404(b) evidence. Pa. R.E. 404(b) provides:

(b) Crimes, Wrongs or Other Acts

6

(1) Prohibited Uses. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

(2) Permitted Uses. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

Evidence of prior crimes may be admissible if it is relevant for a purpose other than to attack the defendant's character, as outlined in Rule 404(b). Commonwealth v. Tyson, 119 A.3d 353, 358 (Pa. Super. 2015). In Appellant's case, the Superior Court has already held the prior bad acts evidence admissible as part of a common scheme. Commonwealth v. Walker, 712 EDA 2017, at 15, n. 5 (Pa. Super. 2018). This claim is meritless.

Appellant sporadically mentions that there is no arrest warrant in the record. This is incorrect, there is an arrest warrant with an affidavit of probable cause and Appellant included this document in his pro se PCRA. Appellant makes claims regarding a perceived need for an additional arrest warrant. This claim is undeveloped and meritless.

Appellant claims multiple instances of ineffective assistance of counsel. It is well-settled that counsel is presumed effective and Petitioner bears the burden of proving the alleged ineffectiveness. Commonwealth v. Lesko, 15 A.3d 345, 380 (Pa. 2011). For a PCRA Petitioner to gain relief on a claim of ineffective assistance of counsel, Petitioner must establish that: (1) the underlying claim is of arguable merit; (2) counsel's course of conduct was without any reasonable basis designed to effectuate his client's interest: and (3) he was prejudiced by

7

counsel's ineffectiveness. Commonwealth v. Guess, 53 A.3d 895, 899 (Pa. Super. 2012). An ineffectiveness claim fails if Petitioner cannot satisfy each prong of the test. Commonwealth v. Fulton, 830 A.2d 567, 572 (Pa. 2003). Counsel will not be deemed ineffective if a reasonable basis for their actions exists and if a reasonable basis does not exist, relief will only be given if Petitioner establishes prejudice. Commonwealth v. Loner, 836 A.2d 125, 133 (Pa. Super. 2003). If Petitioner fails to establish prejudice, the Court may decide the ineffectiveness claim on that basis alone. Id.

Appellant's first claim of ineffectiveness is that counsel failed to address constitutional and procedural violations. This claim is undeveloped and has no merit. Appellant fails to identify any specific actions or failure to act by counsel and therefore it is impossible for Appellant to satisfy any of the three prongs of the ineffectiveness test.

Appellant claims counsel was ineffective for failing to call an alibi witness. In this claim, Appellant cites to the record at N.T. 4/9/15 at 128 which refers to Nicole Bell. Appellant mentions counsel's failure to call an alibi witness in his filings however he never makes any mention of what the witness would testify to or if the witness was available to testify. In order to prove ineffectiveness for failing to call a witness, Appellant must show that the witness existed and was available, that counsel knew of the witness, that the witness was willing to testify and that the absence of the testimony prejudiced Appellant. Commonwealth v. Brown, 767 A.2d 576, 581-582 (Pa. Super. 2001). Appellant must show that the witness' testimony would have been beneficial to his case. Commonwealth v. Wantz, 84 A.3d 324, 332-333 (Pa. 2014). This claim fails for Appellant's failure to explain Nicole Bell's proposed testimony or include any certification or affidavit as to her availability to testify and the content of her testimony.

8

Appellant makes ineffectiveness claims regarding counsel's failure to address the lack of a certification from the Grand Jury and an arrest warrant. As discussed above, Appellant's claims regarding these documents lack merit. Therefore, counsel's failure to address them is reasonable and not a cause for a finding of ineffectiveness.

Appellant claims that counsel was ineffective for failing to address the admission of prior bad acts. In fact, counsel argued a motion to exclude the prior bad acts. N.T. 4/6/15. The claim is meritless.

Appellant claims counsel was ineffective for failing to address the fact that sentencing did not occur within the 90 day period required by Pa. R. Crim. P. 704. Appellant was found Guilty on April 15, 2015. Sentencing was deferred for a Megan's Law Assessment, Presentence Report and Mental Health evaluation and was scheduled for July 27, 2015. This initial sentencing date was beyond the 90 day time period to give time for the reports to be completed. Sentencing was continued due to the fact that a protracted hearing was necessary and this was scheduled for September 18, 2015. On September 18, 2015 sentencing was continued because the Court was on trial. On November 20, 2015 sentencing was again continued because the Court was on trial and counsel was on trial and counsel waived timeliness. Sentencing was scheduled for February 12, 2016, at which time the Commonwealth's doctor was unavailable and counsel withdrew from the case, requiring new counsel to be appointed. New counsel entered on March 2, 2016, and sentencing was scheduled for June 10, 2016. On June 10, 2016 sentencing was continued due to a defense request because counsel was on trial and counsel waived timeliness. On July 14, 2016 sentencing was continued to August 26, 2016. On August 26, 2016 sentencing was continued because the Court was on trial. Sentencing was scheduled for September 15, 2016 and went forward on that day. Appellant's claim is meritless because counsel did address the

9

sentencing continuances, and waived timeliness. Additionally, the Superior Court addressed the delay in sentencing during Appellant's direct appeal and found no error. There is no indication that Appellant suffered any prejudice due to this delay.

Appellant claims counsel abandoned him with no good cause. Trial counsel represented Appellant through trial. Before sentencing, on February 10, 2016, counsel filed a Motion to Withdraw and that motion was granted on February 12, 2016, at which time new counsel was appointed for sentencing. Trial counsel cited in his motion various issues between Appellant and himself including Appellant's threats to sue counsel, Appellant's allegations that counsel was ineffective, was intentionally undermining the case, and was colluding with the District Attorney. This Motion outlined sufficient cause for counsel to withdraw from the case, Appellant's claim is meritless.

Appellant claims counsel was ineffective for not objecting to a forensic report and forensic expert. Detective James Berner gave forensic arson testimony. N.T. 4/10/15 at 93-170. Detective Berner did not give expert testimony. Counsel did object to portions of Detective Berner's testimony, and there was no forensic report prepared. Appellant's claim is meritless.

Appellant claims ineffectiveness for counsel's failure to object to the restitution ordered without a hearing on his ability to pay. A sentencing court must order restitution equal to the victim's full loss, regardless of a defendant's ability to pay and that ability to pay is only considered in a hearing upon default. Commonwealth v. Colon, 708 A.2d 1279, 1282-1284 (Pa. Super. 1998). An objection to the restitution order would have been fruitless and counsel is not ineffective for failing to make a meritless objection.

10

Appellant claims that counsel was ineffective for filing a defective amended PCRA petition and not filing a supplemental petition. The claim that counsel's amended PCRA petition was defective is undeveloped. Appellant points to no issues in the petition and the petition mostly focuses on clearly articulating and providing legal authority for Appellant's claims in his pro se petition. Further, counsel did file an amended petition integrating Appellant's pro se filings. Further, Appellant spoke with PCRA counsel on and off the record on February 21, 2020 regarding his PCRA. This claim is meritless.

## CONCLUSION

For the reasons stated, the dismissal of Appellant's PCRA Petition should be affirmed. No relief is warranted.

BY THE COURT

_____

BRIGHT, J.

DATE: 3/31/2021